## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENDEAVOR TRADING, LLC, individually and on behalf of all those similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> JPMORGAN CHASE & CO., J.P. MORGAN SECURITIES LLC, J.P. MORGAN CLEARING CORP. (now known as J.P. MORGAN SECURITIES LLC), J.P. MORGAN FUTURES INC. (now known as J.P. MORGAN SECURITIES LLC), and JOHN DOES 1-25, <br><br> *Defendants*. | Civil Action No. 1:20-cv-5285 <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel:

### INTRODUCTION

1.      Plaintiff Endeavor Trading, LLC ("Plaintiff") files this civil action under Section 22 of the Commodity Exchange Act ("CEA"), Federal Rule of Civil Procedure 23, and common law for damages, costs of suit, and other relief as may be just and proper, each on behalf of itself and a class of those similarly situated ("Class" as defined below) against Defendants JPMorgan Chase & Co., J.P. Morgan Securities LLC, J.P. Morgan Clearing Corp. (now known as J.P. Morgan Securities LLC), J.P. Morgan Futures Inc. (now known as J.P. Morgan Securities LLC) and John Does 1-25 (collectively, "Defendants") for Defendants' unlawful and intentional

manipulation of U.S. Treasury futures contracts and options on those contracts ("Treasury Futures") that trade on United States-based exchanges.

2.      Throughout the Class Period, Defendants routinely engaged in a sophisticated and manipulative scheme in which they injected materially false and illegitimate signals of supply and demand into the Treasury Futures market in order to (a) induce other market participants to trade against Defendants' Genuine Orders (i.e., orders that Defendants did want to execute) on the opposite side of the market from the spoof orders at prices, quantities, and times at which Plaintiff and other market participants otherwise would not have traded, and (b) financially benefit Defendants.

3.      Defendants concealed their misconduct from investors until JPMorgan disclosed that it is subject to a criminal investigation in its 2019 Form 10-K. JPMorgan admitted that the Department of Justice ("DOJ") is investigating "trading-practice issues in markets . . . such as U.S. Treasuries."[1]

4.      Defendants have been investigated by federal regulators previously for their spoofing practices. In 2019, two JPMorgan employees pled guilty to spoofing charges, admitting that they "learned to spoof from more senior traders, and spoofed with the knowledge and consent of [their] supervisors."[2]

5.      Defendants purposefully concealed their misconduct from their investors, including Plaintiff and members of the Class. After reasonable discovery, Plaintiff will uncover more evidence to support the allegations contained herein.

---

[1] JPMorgan Chase & Co., Annual Report (Form 10-K), 280-81, (Feb. 25, 2020), https://jpmorganchaseco.gcs-web.com/node/315401/html.

[2] Press Release, DOJ, Precious Metals Trader Pleads Guilty to Conspiracy and Spoofing Charges (Aug. 20, 2019), https://www.justice.gov/opa/pr/precious-metals-trader-pleads-guilty-conspiracy-and-spoofing-charges.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Section 22 of the CEA, 7 U.S.C. § 25, and 28 U.S.C. §§ 1331 and 1337. This Court also has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) and Section 22 of the CEA, 7 U.S.C. § 25(c) because: during the Class Period, each Defendant resided, transacted business, was found, or had agents in the District; a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this District; and a substantial portion of the affected interstate trade and commerce discussed herein has been carried out in this District, as more particularly alleged below. Several of Defendants are or were headquartered in this District.

8.      This Court has personal jurisdiction over each Defendant. As alleged below, a substantial part of the events giving rise to Plaintiff's claims occurred in this District and the United States. Defendants manipulated the prices of Treasury Futures that Defendants traded in this District and with customers located in the United States. Defendants' manipulation harmed investors in this District and throughout the United States by causing them to pay more for their Treasury Futures purchases and receive less for their Treasury Futures sales than they would have in an unmanipulated market.

9.      Defendants, either themselves or through their subsidiaries as agents, purposefully availed themselves of doing business in the United States and in this District by, *inter alia*: (a) manipulating the prices of Treasury Futures in transactions with investors in this District and throughout the United States; and (b) collecting unlawful overcharges from, and paying unlawful prices to, investors in this District and throughout the United States.

## PARTIES

### I.     Plaintiff

10.     Plaintiff Endeavor Trading, LLC was organized as an Illinois limited liability company and transacted in Treasury Futures during the Class Period, including purchases and sales of futures contracts on the CBOT.  Plaintiff was injured and suffered losses from trading at artificial prices directly and proximately caused by Defendants' unlawful manipulation.

### II.     Defendants

#### A.     JPMorgan Chase & Co.

11.     Defendant JPMorgan Chase & Co. is a Delaware corporation headquartered in New York, New York. JPMorgan Chase & Co. is a multinational banking and financial services corporation. JPMorgan Chase & Co. has approximately 37,000 employees in the New York City metro area, more than any other locale in the world.

#### B.     J.P. Morgan Securities LLC

12.     Defendant J.P. Morgan Securities LLC is a Delaware company and its principal place of business is located in New York, New York. JPMorgan operates as a subsidiary of JPMorgan Chase & Co.

#### C.     J.P. Morgan Clearing Corporation

13.     J.P. Morgan Clearing Corp. (now known as and merged into J.P. Morgan Securities LLC) was a Delaware corporation headquartered in Brooklyn, New York, until October 1, 2016. J.P. Morgan Clearing Corp. offered securities and futures clearing, settlement, lending, and related services to traders, hedge fund managers, broker-dealers, and investment advisors. It also provided operational and administrative services for registered broker-dealers.

### D.    J.P. Morgan Futures Inc.

14.    Defendant J.P. Morgan Futures Inc. (now known as and merged into J.P. Morgan Securities LLC) was a Delaware corporation headquartered in New York, New York until June 1, 2011, when it was acquired by J.P. Morgan Securities LLC.

15.    Collectively, the individual JPMorgan Defendants are referred to as "JPMorgan."

16.    During the Class Period, JPMorgan, including its predecessors, served as a primary dealer of U.S. Treasury Securities and transacted in U.S. Treasury-based instruments, including Treasury Futures.

### E.    John Doe Defendants

17.    Defendants John Does 1-25 are persons and entities employed by or affiliated with Defendants or others that directly or indirectly inappropriately influenced or attempted to influence the trading and prices of Treasury Futures. The defined term "Defendants" also includes John Doe Defendants.

18.    During the Class Period, Defendants' subsidiaries and other affiliates of Defendants joined and furthered the manipulation of Treasury Futures, at artificial prices not reflecting fundamental supply and demand, to Defendants' benefit. The defined term "Defendants" also includes each Defendant's parent companies, subsidiaries, predecessors and successors, affiliates, agents, and employees.

19.    Whenever reference is made to any act of any corporation, the allegation means that the corporation engaged in the act by or through its directors, officers, employees, or agents while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

20.     Each of the Defendants acted as the agent of, or participated in a joint venture for, the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

## FACTUAL ALLEGATIONS

### I.     Relevant Factual Background

21.     United States Treasury Securities are government debt instruments issued by the United States Department of the Treasury to finance government spending as an alternative to taxation. Treasury bonds and notes represent loans to the U.S. government. Treasury bonds, notes, and bills are considered marketable securities because after they are sold at auctions, institutional and individual investors through investment companies can buy and sell Treasuries in the secondary market. These Treasury Securities, including bills, notes, bonds, and other related instruments, are often referred to as "Treasuries." Treasuries are often considered "riskless" investments given that the "full faith and credit" of the U.S. government backs these securities.

22.     A buyer of Treasuries has the option to either (i) hold the bond or note until maturity, at which time the face value becomes due, or (ii) re-sell the bond or note in the secondary market prior to maturity. In the event of re-selling, the investor recovers the market value of the bond or note, which—depending on prevailing yields—may be more or less than its face value. In the interim, the investor receives semi-annual coupon payments every six months.

23.     Treasury Futures are standardized contracts for the purchase and sale of U.S. Government notes or bonds for future delivery. Treasury Futures are considered among the most liquid financial products, and thus provide easy access to leverage and both capital and

operational efficiencies. In addition, Futures are an attractive investment option because they are a neutral security and can be traded on both the long or short side.[3]

24.     Treasury Futures and options contracts are available on the 2-year, 5-year, 10-year, and 30-year tenors. Additionally, the Chicago Mercantile Exchange ("CME") also offers Ultra U.S. Treasury Bond Futures and Ultra 10-years T-Note Futures.[4] According to the CME, in February 2020, the average daily volume was 4.4 million Treasury Futures contracts and nearly 1 million Treasury Options contracts.

25.     The CME Group Inc. ("CME Group") is one of the world's largest derivative exchanges. It is made up of four exchanges: CME, CBOT, NYMEX, and COMEX.

26.     The CME Group also owns and operates CME Globex, an electronic platform that is used to trade futures and options contracts. The CME Globex is an open-access marketplace that allows market participants to enter their own trades directly and view the order book and real-time price data nearly 24 hours a day. CME governs the conduct of CME Globex users and can take disciplinary action against users, including but not limited to, excluding users from trading on the platform.

27.     The CME Globex order book electronically displays quantities of anonymous orders or offers to sell futures contracts and bids to buy futures contracts at various prices or "levels." An "order" is a request to buy or sell. The highest price at which a trader is willing to buy is called the "best-bid level" or "first-bid level." The lowest price at which a trade is willing to sell is called the "best-ask level" or "first-ask level." The "bid-ask spread" is the difference between these two prices.

---

[3] *The Basics of U.S. Treasury Futures*, CMEGroup, (Jan. 24, 2019), https://www.cmegroup.com /trading/interest-rates/basics-of-us-treasury-futures.html.

[4] *Id*.

28.     Because the orders are posted anonymously in the order book, market participants cannot identify the Defendants serially placing then canceling orders to spoof the market.

29.     The nature of the Treasuries Futures market makes it susceptible to spoofing. "Spoofing" is a manipulative and prohibited trading device used to create artificial prices in the futures market and ultimately undermines the integrity of trading. The Commodity Futures Trading Commission ("CFTC") describes spoofing as practices that include: (a) submitting or canceling bids or offers to overload the quotations system of a registered entity; (b) submitting or canceling bids or offers to delay another person's execution of trades; (c) submitting or canceling multiple bids or offers to create an appearance of false market depth; or (d) submitting or canceling bids or offers with the intent to create artificial price movements upwards or downwards.[5]

30.     The practice of spoofing is illegal because it undermines the integrity of trading.

31.     "Spoofers" trick investors into buying or selling by entering Deceptive Orders that they have no intention of filling. This creates a fake supply and demand that affects the prices of futures contracts to the benefit of the spoofer. Spoofing has "emerged in an era of computerized trading as a threat to market legitimacy."[6]

32.     Spoofing occurs in three steps: the "build-up," the "cancel," and the "sweep," as exhibited in the illustration below.[7] In the first stage, the spoofer places many orders to sell that the spoofer does not intend to execute. Honest market participants, or more likely their

---

[5] CFTC, Antidisruptive Practices Authority, Interpretive Guidance and Policy Statement, 78 Fed. Reg. 31890, 31896 (May 28, 2013).

[6] Matthew Leising, *Spoofing*, Bloomberg: QuickTake (Updated Jan. 29, 2020, 4:44 PM), https://www.bloomberg.com/quicktake/spoofing.

[7] Matthew Leising, Mira Rojanasakul and Adam Pearce, *How to Catch a Spoofer*, Bloomberg (Sept. 4, 2015), https://www.bloomberg.com/graphics/2015-spoofing/.

computers, follow suit and place orders to sell with the expectation that prices will fall and they can buy back their contracts for a profit. In stage two, the spoofer then cancels the fake orders. This effectively removes the false demand from the market. In stage three, the spoofer sweeps up the market, buying the honest market participants' contracts. As the honest traders scramble to reverse their sell orders, the spoofer is waiting to sell their contracts back to them at a profit.



33.      Spoofers use the same technique to increase prices as well. Spoofing allows the dishonest trader to profit by either buying futures contracts below the market price or selling futures contracts above the market price.

34.    The CFTC has described spoofing as "a particularly pernicious example of bad actors seeking to manipulate the market through the abuse of technology."[8] While the electronic order book has increased information available to traders, "it create[d] the possibility that false information injected into the order book could trick [honest traders] into trading to benefit a bad actor."[9]

35.    Defendants have taken advantage of honest market participants such as Plaintiff and the members of the Class who purchased or sold Treasury Futures at artificial prices during the Class Period, through their use of the manipulative practice of "spoofing" and undermined the integrity of the Treasury Futures market.

## II.    Defendants' Misconduct

### A.    Defendants Have Manipulated the Treasury Futures Market

36.    JPMorgan claims that its futures commission merchant ("FCM") division is "one of the most highly capitalized market leaders in the futures and options brokerage business."[10]

37.    JPMorgan actively trades interest rate futures contracts, including Treasury Futures.

38.    Throughout the Class Period, Defendants spoofed the Treasury Futures market by inducing Plaintiff and members of the Class to trade in a market with artificial prices in order to increase their trading profits.

---

[8] *See* Press Release, CFTC, Statement of CFTC Dir. of Enf't James McDonald (Jan. 29, 2018), https://www.cftc.gov/PressRoom/SpeechesTestimony/mcdonaldstatement012918.

[9] See James McDonald, Enf't Dir., CFTC, Address at NYU School of Law:  Program on Corp. Compliance & Enf't (Nov. 14, 2018),  https://www.cftc.gov/PressRoom/SpeechesTestimony /opamcdonald1.

[10]    *See Futures & Options and OTC Clearing*, J.P. Morgan Markets, https://www.jpmorgan.com/jpmpdf/1320613563458.pdf (last visited July 7, 2020).

39.    Defendants routinely placed deceptive orders to buy and sell Treasury Futures with the intent to cancel those orders before execution. This induced market participants to trade in what appeared to be a legitimate change in supply or demand. This also enabled Defendants to buy and sell Treasury instruments from and to market participants, including Plaintiff and the members of the Class, at artificially higher or lower prices than would have existed if not for the deceptive orders.

40.    Defendants' spoofing had several defining characteristics demonstrating their intent to manipulate the market, including: (a) Defendants placed deceptive orders at the same price as the best-bid or offer price knowing that this would strongly impact the market; (b) the deceptive orders were then canceled milliseconds after being entered; and (c) the aggressor orders were often the exact size needed to take all available liquidity remaining after the canceled deceptive orders.

41.    Defendants' spoofing effected markets beyond those for the Treasury Futures because traders and algorithmic trading take into account the prices of the Treasury Futures when assessing other investments.

42.    Defendants concealed their misconduct from Plaintiff and members of the Class, its investors, and the public until JPMorgan disclosed that it was being investigated by the Department of Justice in its 2019 Form 10-K, filed February 25, 2020:

> *Metals and U.S. Treasuries Investigations and Litigation and Related Inquiries.* Various authorities, including the Department of Justice's Criminal Division, are conducting investigation relating to trading practices in the metals market and related conduct. The Firm also is responding to related requests concerning similar trading-practices issues in markets for other financial instruments, such as U.S. Treasuries.[11]

---

[11]    JPMorgan Chase & Co., Annual Report (Form 10-K), 280-281, (Feb. 25, 2020) https://jpmorganchaseco.gcs-web.com/node/315401/html.

43.    Shortly after the disclosure, the Wall Street Journal reported that Defendants are being investigated for manipulating the Treasury Futures market. According to the article dated March 17, 2020, the "Justice Department's Fraud Section and regulators at the Commodity Futures Trading Commission are involved" in the investigation.[12]

### B.    Defendants Have Manipulated Other Markets

44.    Throughout the last ten years, JPMorgan has repeatedly engaged in manipulative and prohibited trading practices that have attracted the scrutiny of regulatory bodies. JPMorgan is currently a defendant in a related action alleging manipulation of precious metals futures contracts and options in violation of the CEA 7 U.S.C. § 1, *et seq.*, using the same spoofing techniques alleged here.[13]

45.    Defendants' market-manipulating practices among their employees is pervasive. In 2013, JPMorgan settled an action involving "power market" manipulation claims for $410 million.[14] JPMorgan also agreed to pay a criminal fine of $550 million in connection with a Plea Agreement in 2015 related to market-rigging of the FX spot market.[15]

46.    Federal regulators are also seeking fines and criminal sanctions against JPMorgan and their employees for engaging in spoofing and other manipulative trading practices. Last year, the DOJ and CFTC criminally charged the head of JPMorgan's precious metals trading desk, Michael Nowak, and two other employees, Gregg Smith and Christopher Jordan, under the

---

[12] Dave Michaels, *Government is Broadening Investigations of Spoofing-Like Practices*, Wall St. J., (Mar. 17, 2020, 8:00 AM) https://www.wsj.com/articles/government-is-broadening-investigations-of-spoofing-like-practices-11584446400.

[13] *In re JPMorgan Precious Metals Spoofing Litig.*, No. 1:18-cv-10356 (S.D.N.Y. 2018).

[14] *See* Scott DiSavino, *JPMorgan to pay $410 million to settle power market case*, Reuters (July 20, 2013, 8:29 AM), https://www.reuters.com/article/us-jpmorgan-ferc/jpmorgan-to-pay-410-million-to-settle-power-market-case-idUSBRE96T0NA20130730.

[15] *See* Plea Agreement, *United States v. JPMorgan Chase & Co.*, No. 15-cr-00079 (D. Conn. May 20, 2015), ECF No. 13, https://www.justice.gov/atr/file/837551/download.

RICO Act for their manipulation of the metals market in an effort to crackdown on spoofing.[16] Their scheme spanned for nearly a decade in which over a dozen employees participated. So far, two employees have pled guilty to criminal charges related to spoofing.

47.    On August 29, 2019, one of the participants and former metals trader, Christian Trunz, pled guilty to "one count of conspiracy to engage in spoofing and one count of spoofing." In his plea allocution, Trunz admitted that between July 2007 and August 2016 he placed thousands of orders that he did not intend to execute for gold, silver, platinum, and palladium futures contracts traded on CME Group-operated exchanges. Trunz also admitted that his supervisors and more senior traders taught him how to spoof and that his supervisors knew that he was spoofing.[17]

48.    John Edmonds, another trader, also pled guilty in the spoofing conspiracy. Edmonds admitted that he learned how to spoof from senior traders at JPMorgan and that "he personally deployed this strategy hundreds of times with the knowledge and consent of his immediate supervisors."[18]

49.    Indeed, on November 6, 2018, in announcing the guilty plea, the DOJ stated that:

> For years, John Edmonds engaged in a sophisticated scheme to manipulate the market for precious metals futures contracts for his own gain by placing order that were never intended to be executed, . . . The Criminal Division is committed to prosecuting those who

---

[16] *See* Tom Schoenberg and David Voreacos, *JPMorgan's Metals Desk was a Criminal Enterprise, U.S. Says*, Bloomberg (Updated Sept. 16, 2019; 1:47 PM), https://www.bloomberg.com/news/articles/2019-09-16/jpmorgan-s-metals-desk-was-a-criminal-enterprise-u-s-says.

[17] Press Release, DOJ, Precious Metals Trader Pleads Guilty to Conspiracy and Spoofing Charges (Aug. 20, 2019), https://www.justice.gov/opa/pr/precious-metals-trader-pleads-guilty-conspiracy-and-spoofing-charges.

[18] Press Release, DOJ, Former Precious Metals Trader Pleads Guilty to Commodities Fraud and Spoofing Conspiracy (Nov. 6, 2018), https://www.justice.gov/opa/pr/former-precious-metals-trader-pleads-guilty-commodities-fraud-and-spoofing-conspiracy.

> undermine the investing public's trust in the integrity of our commodities markets through spoofing or any other illegal conduct. . . . In pleading guilty, Edmonds admitted that he learned this deceptive trading strategy from more senior traders at the Bank, and he personally deployed this strategy hundreds of times with the knowledge and consent of his immediate supervisors. This case is the result of an ongoing investigation by the FBI's New York Field Office.[19]

50.     Indeed, federal prosecutors have stated that more than a dozen of Defendants' employees ultimately helped execute manipulative spoof trades. Prosecutors also highlighted that J.P. Morgan employed an advanced method of spoofing—namely, J.P. Morgan traders layered multiple Deceptive Orders at different prices in rapid succession that, in the aggregate if not individually, were substantially larger than the visible portion of the opposite-side Genuine Order. This new style of "layering" was more difficult both to execute and to detect.[20]

51.     The indictment charges 14 counts and alleges, *inter alia*, that "Defendants and their co-conspirators placed orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution, including in an attempt to artificially affects prices and to profit by deceiving other market participants."[21]

52.     Further, the indictment alleged that through placing Deceptive Orders, Defendants' employees sought to inject false and misleading information about the actual supply and demand for precious metals futures contracts, and to deceive other market participants into believing that the visible order book accurately reflected market-based forces of supply and demand. As a result, "[t]his false and misleading information was intended to, and at times did, trick other market participants into reacting to the apparent change and imbalance in supply and

---

[19] *Id.*

[20] Superseding Indictment at ¶ 26e, *United States v. Smith*, No. 19-cr-669 (N.D. Ill. Nov. 14, 2019), ECF No. 52.

[21] *Id.* ¶ 26.

demand by buying and selling precious metals futures contracts at quantities, prices, and times that they otherwise likely would not have traded."[22]

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Class:

> All persons or entities who transacted in Treasury Futures or options on Treasury Futures traded on a domestic exchange during the period January 1, 2009 through the present (the "Class Period") (the "Class").

54.     Excluded from the Class are Defendants and their co-conspirators; parents, subsidiaries, and corporate affiliates, the officers, directors, or employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; and any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator and any person acting on their behalf. Also excluded from the Class are the United States Government, any judicial officer presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action. Plaintiff reserves the right to revise the definition of the Class based upon subsequently discovered information and reserves the right to establish subclasses where appropriate.

55.     The Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are at least hundreds of individuals or entities that purchased, sold, or held relevant Treasury Futures during the Class Period at prices artificially impacted by Defendants' wrongful conduct throughout the United States. While the exact number and identity of Class members is unknown to Plaintiff, this can be ascertained from readily available information.

---

[22] Press Release, DOJ, Superseding Indictment Charges Former Precious Metals Salesman with Racketeering Conspiracy (Nov. 15, 2019), https://www.justice.gov/opa/pr/superseding-indictment-charges-former-precious-metals-salesman-racketeering-conspiracy

56.     Common questions of law and fact exist to all members of the Class and predominate over any issues solely affecting individual Class members, including legal and factual issues relating to liability and damages, such that certifying this case as a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The common and predominating questions of law and fact include, but are not limited to:

a.    Whether Defendants fixed, lowered, maintained, stabilized, and/or otherwise manipulated Treasury Futures prices;

b.    The nature and duration of Defendants' manipulation of Treasury Futures prices;

c.    Whether manipulation of Treasury Securities prices injected artificial prices into Treasury Futures that traded on the CME;

d.    Whether Defendants participated in the Treasury Futures market;

e.    Whether Defendants' conduct violated section 22 of the CEA;

f.    Whether Defendants' conduct acted to aid and abet CEA violations;

g.    Whether Defendants' unlawful conduct caused injury to the business or property of Plaintiff and the Class;

h.    Whether Defendants fraudulently concealed their misconduct from Plaintiff and the Class; and

i.    The appropriate class-wide measure of relief for the Defendants' CEA violations.

57.     Plaintiff's claims are typical of the claims of the Class members Plaintiff seeks to represent. As alleged herein, Plaintiff and the members of the Class sustained damages arising out of the same course of conduct in the violations of law committed by Defendants. The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws as alleged herein.

58.     Plaintiff is willing and prepared to serve the Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and have no interests adverse to or in conflict with the interests of the other members in the Class.

59.     Plaintiff's interests are co-extensive with and are not antagonistic to those of absent members within the Class. Plaintiff will undertake to represent and protect the interests of absent members within the Class and will vigorously prosecute this action.

60.     Plaintiff has engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and absent members of the Class.

61.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

62.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

63.     The Class may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class.

64.     The interest of members within the Class in individually controlling the prosecution of separate actions is theoretical and not practical. The Class has a high degree of

similarity and is cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

65.    The nature of notice to the proposed Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers and/or on the internet.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

66.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of their collusion and manipulation of the Treasury Futures market. Through no fault or lack of diligence, Plaintiff and members of the Class were deceived because of the Defendants' manipulation of the market and could not reasonably discover the Defendants' deception.

67.    Plaintiff and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing their violations of the law. As alleged herein, Defendants' manipulative actions were material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statute of limitations, Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence that Defendants were concealing their illegal activity.

68.    Defendants knowingly, actively, and affirmatively concealed the facts alleged herein including their manipulation of the Treasury Futures market. Plaintiff and members of the Class reasonably relied on Defendants' knowing, active, and affirmative concealment.

69.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from relying on any statutes of limitation in defense of this action.

## CLAIMS FOR RELIEF

### COUNT I

**Manipulation in Violation of the Commodity Exchange Act**
**7 U.S.C. §§ 1, *et seq.***

70.     Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

71.     Plaintiff brings this count on behalf of itself and the members of the Class.

72.     Defendants through their acts alleged herein specifically intended to and did cause unlawful and artificial prices of Treasury Futures, in violation of the CEA, 7 U.S.C. § 1, *et seq.*, through their use of fictitious buy and sell orders and other manipulative conduct.

73.     Defendants manipulated the price of a commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity, in violation of the CEA.

74.     During the Class Period, Treasury Futures' prices did not result from the legitimate market information and the forces of supply and demand. Instead, Treasury Futures' prices were artificially inflated, or deflated, by Defendants' spoofing and other manipulative trading activities.

75.     Throughout the Class Period, Defendants entered large orders to buy or sell without the intention of having those orders filled, and specifically intending to cancel those orders prior to execution. Defendants did this with the intent to inject illegitimate information about supply and demand into the marketplace, and to artificially move prices up or down to suit Defendants' own trades and positions. As a result of these artificial prices, Plaintiff and the Class suffered losses on their trades in Treasury Futures.

76.     Through their use of spoofing and other manipulative techniques, Defendants manipulated the prices of Treasury Futures, throughout the Class Period and thereby caused

damages to Plaintiff and Class members who purchased or sold such instruments at artificially inflated or deflated prices.

77.     At all times and in all circumstances previously alleged herein, Defendants had the ability to cause and did cause artificial prices of Treasury Futures. Defendants, either directly and/or through their employees and/or affiliates, were active in the markets for Treasury Futures, and were aware of the effects of spoofing and other manipulative conduct on those markets.

78.     By their intentional misconduct, Defendants each violated Sections 6(c), 6(d), 9(a), and 22(a) of the CEA, 7 U.S.C. §§ 9, 13b, 13(a), and 25(a), throughout the Class Period.

79.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for Treasury Futures, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

## COUNT II

### Employing a Manipulative and Deceptive Device in Violation of the Commodity Exchange Act
### 7 U.S.C. §§ 1, *et seq*. and Regulation 180.1(a)

80.     Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

81.     Plaintiff brings this count on behalf of itself and the members of the Class.

82.     Defendants' unlawful conduct as described herein, including the use of systematically submitting and canceling spoof orders and engaging in other manipulative conduct in order to artificially move prices for Treasury Futures constitutes the employment of a manipulative and deceptive device.

83.     As alleged herein, Defendants acted intentionally—and, even if they are found to not have acted intentionally, then at least acted recklessly—in employing the manipulative and deceptive device to procure ill-gotten trading profits at the expense of Plaintiff and the Class.

84.     By their intentional misconduct, Defendants each violated Sections 6(c) and 22(a) of the CEA, 7 U.S.C. §§ 9 and 25(a), throughout the Class Period.

85.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for Treasury Futures, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

86.     Plaintiff and members of the Class are entitled to damages for the violations of the CEA alleged herein.

## COUNT III

### Principal-Agent Liability for Violation of the Commodity Exchange Act
### 7 U.S.C. §§ 1, *et seq.*

87.     Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

88.     Plaintiff brings this count on behalf of itself and the members of the Class.

89.     Each Defendant is liable under Section 2(a)(1) of the CEA, 7 U.S.C. § 2(a)(1), for the manipulative acts of their agents, representatives, and/or other persons acting for them in the scope of their employment.

90.     Plaintiff and members of the Class are entitled to damages for the violation alleged herein.

**COUNT IV**

**Unjust Enrichment**

91.     Plaintiff incorporates and re-alleges each preceding paragraph as though fully set forth herein.

92.     Plaintiff brings this count on behalf of itself and the members of the Class.

93.     Defendants benefitted financially from their unlawful acts. As alleged herein, Defendants submitted spoof orders electronically and employed other manipulative techniques to manipulate the prices of Treasury futures in an artificial direction. Defendants intended to, and did, artificially alter prices in a direction that benefitted their trades and positions, at the expense of Plaintiff and the Class.

94.     As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner at the expense of Plaintiff and members of the Class, and the circumstances are such that equity and good conscience require Defendants to make restitution.

95.     Each Defendant should pay restitution for its own unjust enrichment to Plaintiff and members of the Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the members of the Class, and award the following relief:

a)     For an order certifying this action as a class action pursuant to Rules 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class, and Plaintiff's counsel as counsel for the Class;

b)     For a judgment awarding Plaintiff and the Class actual damages for Defendants' CEA violations, together with pre- and post-judgment interest at the maximum rate allowable by law;

c)    For a constructive trust and disgorgement of ill-gotten profits flowing from Defendants' manipulative conduct;

d)    For a judgment awarding Plaintiff and the Class damages against Defendants for Defendants' violations of the federal antitrust law, in an amount to be trebled in accordance with such laws;

e)    For an award to Plaintiff and the Class of their costs of suit, including reasonable attorneys' and experts' fees and expenses; and

f)    For such other and further relief as the Court may deem appropriate, just, and equitable.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: July 9, 2020                                  Respectfully submitted,

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer
Melissa L. Troutner
Ethan J. Barlieb
Jordan Jacobson
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jmeltzer@ktmc.com
mtroutner@ktmc.com
ebarlieb@ktmc.com
jjacobson@ktmc.com

Linda P. Nussbaum
Bart D. Cohen
Christopher B. Sanchez
Marc E. Foto
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Fl.
New York, NY 10036
(917) 438-9189
lnussbaum@nussbaumpc.com

bcohen@nussbaumpc.com
csanchez@nussbaumpc.com
mfoto@nussbaumpc.com

Michael E. Criden
Kevin B. Love
Lindsey C. Grossman
**CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, Florida 33143
Telephone: (305) 357-9000
Fax: (305) 357-9050
mcriden@cridenlove.com
klove@cridenlove.com
lgrossman@cridenlove.com